The first case on our call this morning is Agenda No. 1, People of the State of Illinois v. James Bannister. Counsel may proceed. May it please the Court, Chief Justice Fitzgerald, Good morning. My name is Erica Redick, Assistant Public Defender for Edwin Burnett, Cook County Public Defender for Counsel for the Petitioner James Bannister. You cannot promise to pay for a witness's testimony, tell the witness to tell the truth, and then tell the witness what the truth is. This Court must define the limits of a prosecutor's authority and its methods to secure evidence against the accused. There are two issues before the Court. First, did the prosecution deny James Bannister due process at a fair trial and impugn the integrity of the criminal justice system when it bargained for testimony from a convicted co-defendant using a consistency clause within a contingency plea agreement when this testimony was the only direct evidence of James Bannister's guilt? And two, should this Court bar the use of consistency clauses in contingency plea agreements within Illinois and specifically in James Bannister's case? As the Court is familiar with the facts addressing the first issue, James Bannister's right to due process in a fair trial was decimated by the acts of the prosecution that support that. First, James Bannister had a due process right to a fair trial. Second, the State had no authority to enter that plea agreement with Johnson, the co-defendant, who was convicted. And third, the State had no authority to deliver on the promise that it made to the convicted co-defendant. And fourth, and most important, the prosecution placed Johnson under a compulsion to testify that was so great that it tainted the evidence and impugned the integrity of the criminal justice system. Now, moving to the first point, James Bannister had a due process right to a fair trial. Every criminal defendant, every person accused has that right, and it's guaranteed by the 14th Amendment as well as Illinois' constitutional provisions. And that right to a due process includes the right to be tried on serious weaknesses and should be accepted only with the utmost caution and suspicion. Is there a standing problem, Ms. Reddick, at all? Absolutely not, Your Honor. In this case, standing requires four things, a legally cognizable interest, an injury in fact, that injury having been And at this trial, the use of testimony that was both scripted and pursued or granted pursuant to a contingency plea agreement violated James Bannister's right to a due trial. That was the injury in fact. And then the cause of that injury was the prosecution's securing of this evidence through the use of a plea agreement that this court should not condone. Counsel, as you've noted, this is a case of first impression. And it seems that your position would be on the plea itself, or the testimony itself, that would be banned under any circumstances, regardless of what the agreement was. This testimony, Your Honor, should absolutely be banned from admission. It makes no difference that there was a general requirement that the witness testify truthful. Truthful would not be enough to overcome the problem that was caused, is that correct? Absolutely not, Your Honor. And here is the And I want one final part of that question. And how about the promise that if he testified falsely, the agreement would be voided? What effect, if any, does that have on the calculus of this particular problem? In this situation, because the testimony was required to be consistent with prior statements, prior statements that had been contradicted under oath before, to require consistency There have been agreements, albeit out of our jurisdiction, approving cases in which there was a promise to testify truthfully. That's correct, Your Honor. However, in none of those cases was the accomplice who was testifying, the convicted co-defendant, given the incentives that this particular defendant was given. And not only that, when the testimony The incentives he was given is that he would have his sentence reduced in effect from life to 60 years. It was more than a reduction, Your Honor. In this case, the prosecution mowed through the requirement of the legal authority of a court to act. We are moving into the second issue, Your Honor. But I want to be sure to fully answer what the court has raised. And it's simply this. Whenever you require a witness to testify consistently with testimony, regardless of mandating that it be the truth as well, how does the prosecution know what the truth is? It does not. It only knows what is consistent. When a prosecutor is placed in the position of determining that the truth are statements that are consistent with the truth, the prosecution is placed in the position of being the trier of fact. The prosecution cannot determine truth. The prosecution can only determine consistency. So when you require consistency and truth, you are equating the truth with consistency. That is not admissible evidence within Illinois. This should not be condoned, because it is not admissible evidence within the Tennessee decision, State v. Bolden, cited by the State. All of them condemn scripted testimony. Ms. Rudder? Yes, Your Honor. Why isn't this simply a case of rather than the admissibility, the weight to be given to the testimony? I mean, the plea agreement, everything about this plea agreement that we're discussing here today was known to the trial judge, right? Yes, Your Honor. And still, obviously, the trial judge is the trier of fact in this case, found the witness' testimony, even in light of all those facts and circumstances, to be credible. So why doesn't it go to the weight rather than the admissibility of the testimony? The admissibility is the key reason this evidence or the rubric under which this Court should consider the evidence rather than weight, simply because the testimony is credible and tainted evidence is inadmissible. Tainted comes about when scripting occurs. And scripting occurs when a witness is placed under a compulsion to testify in a specific way. Is there any import, Ms. Rudder, that this was a bench trial, that the judge not only heard the testimony, it heard of the consistency agreement, it knew exactly what was going on that was offered to this witness before giving that testimony? Any import to that at all that it's a bench trial? No, there is no import from the standpoint of the admissibility of the evidence and the fact that it should not have been admitted, whether a bench trial or a jury trial. The judge knew, of course, that this convicted co-defendant had testified previously. In fact, this particular trial court had sat through the trial of this convicted co-defendant. It was a jury trial. And a jury trial determined that Johnson was guilty of two crimes, one of which was the murder of his wife, and the other was the murder of his son. The jury trial was undisturbed from the point of conviction in 1991 until the state showed up with its plea offer in 2004. In Illinois, a prosecutor now has the authority to overturn a jury verdict of guilty. The prosecutor has the authority to determine which of all the statements a witness has made are true and which ones are not. That invades the jurisdiction of the court. In Illinois, it should be the case that all consistency clauses should be banned. However, acknowledging that many jurisdictions have found that consistency clauses are permissible, certainly the acknowledgement has to be that this has been used in jurisprudence. The problem, however, occurs when consistency is equated with the truth, and it is the state's attorney who is driving the driving force, the determiner of what is true. And there's a consistency agreement. Isn't that always true? If there's a consistency agreement in any case, whether it's first impression or retrial or whatever, the prosecutor would be, I think, as you mentioned, the driving force behind it. Well, the prosecutor would be the one. Yes, Your Honor, the prosecutor would be the one mandating that testimony conform to a certain script, and that is what should not be permitted in Illinois. Consistency clauses invite witnesses to testify to please prosecutors, and this causes them to disregard their oaths of truthfulness. In this case, didn't Johnson give several different accounts to police? He absolutely did, Your Honor, at least five. They first denied his involvement in the murders and said he was at a friend's home at the time, and this was not a part of the post-arrest statement that was agreed to, is that correct? That is correct, Your Honor. It was also later on at the police station that he gave an incriminating statement and signed a confession himself. That was during his motion to suppress those statements. And those, what he had said on other occasions was removed from the script that was presented to him. That's correct, and in addition, in 1990, he provided an affidavit indicating that one of the seven co-defendants whom he had previously testified was involved was not involved on this occasion as well. Did the defense raise the inconsistencies on different occasions, his testimony on different occasions? Yes, Your Honor, the defense did. But the problem with the concern that according cross-examination and fully disclosing the plea agreement, that that somehow cures the taint of evidence secured in this fashion is completely a fallacy. The problem is this, once the witness is tampered with to this degree, the witness is placed under this conundrum. Johnson had to testify in such a way that Bannister would be convicted and sent to prison for life or face doing life in prison himself. When a witness is presented with those options, the testimony that witness gives will of necessity conform with what is dictated by the state. Johnson's life depended on it. He had no hope of ever walking out of those prison doors. He was convicted in 1991. On appeal, direct appeal, that conviction was affirmed. All of his post-conviction petitions had been denied. In 2004, when the state showed up in the prison with this get out of jail early deal, Johnson was placed under a severe, a severe compulsion to provide this testimony against James Bannister, and that's what he did. And that is what this court cannot sanction. When you require consistency and indicate that the witness has to tell the truth, it was the language of this agreement that was so very offensive. The state said Michael Johnson shall testify truthfully, but the truth shall be consistent with his post-arrest 1989 statements and his statements in 2004. This to the exclusion of all the other statements he had made, and the incentive was unbelievable. To go from a conviction where you're spending life, a verdict, a jury verdict, which is sacred, and to have a prosecutor who has the authority to magically revest the court with jurisdiction 13 years after the fact, to cause and mislead a court to enter an order dismissing a jury verdict of guilty, and in doing that, to then allow this same witness to replete, this defendant to replete to a single murder for 60 years, 30 days, I'm sorry, 30 years effectively, because there would be day for day good time credit, credit for all the time this person has served in prison, and with this deal, Johnson would see the light of day in 16 or 18 years. Your Honor, Johnson is confined in TAMS. In TAMS, super maximum facility. That is the other danger that this whole agreement caused. The Illinois Department of Corrections determined that because of the 40 to 50 violations that Johnson committed while in TAMS, he was deemed a high security risk. That is until the prosecutor showed up in 2004 with a plea offer that allowed him to plead to a 60-year term that would allow him to be released and to serve that prison sentence in the prison of his choice or a medium security prison. Once again, the incentives together with the undue compulsion placed on Johnson guaranteed that this evidence would violate James Johnson's due process rights. This is evidence that this court should not condone. This is evidence that shakes our confidence. Wasn't there another gang member who testified at the original trial and then recanted against this defendant? Your Honor, his very first trial, the only evidence, the only evidence of his guilt was presented by a young man named Dionda Wilson. He was 12 years old at the time. He belonged to what was considered a rival gang at the time. He went to the police. He indicated that he had witnessed the events and gave testimony before the grand jury at six of the co-defendants' trial and then at Michael Johnson's trial. A short while later, that same witness went to one of the lawyers of the seven and admitted that he perjured himself. Ultimately, that was the testimony that allowed James Bannister to have a trial, a retrial on these charges. The state, with Dionda Wilson's testimony, declared the perjury that it was had no case against James Bannister. And so in January of 2004, when the court granted Bannister a trial free from perjured testimony, that's the time that the state began working on Johnson. And they worked on him from January until June until Johnson acceded to their wishes. And they met Johnson's demands, which were, let me out of jail, let me out of the supermaximum facility. Yes, Your Honor. The agreement called for Johnson to give his post-arrest statement testimony, right? Yes. And also to be truthful. Yes. Right. So if that post-arrest statement testimony was not truthful, he would be in violation of the consistency agreement, right? Yes. Either way, he'd be in violation. If he didn't give, if the post-arrest statement was not truthful, he'd be in violation of the consistency agreement. But it's, again, exactly that reason, the requirement. The state makes itself the trier of fact. The state's function is to prosecute, not to find out which statements are the truthful statements for purposes of finding guilt. But all the consistency agreements that have been upheld in other jurisdictions, they've had that your testimony must be true. Not all of them, Your Honor. And that has been part of the problem. And that is what the court today needs to decide, what is going to be required, if anything. It is the position of the petitioner, Mr. Bannister, that there is no place for consistency clauses and plea clauses to exist, the language of those agreements is critical. In this case, the prosecution required with the words, Johnson's testimony shall be consistent with. In other jurisdictions, less commanding language has been found to be violative of the scripting. So in this case, it is the precise language that the testimony shall be consistent with. And again, equating truth with the statements made previously are consistent with the statements made at trial. That is not truth. That is, placing the prosecutor in the position of determining truth based on a witness's ability to say the same thing the witness said before. What if the truth is something different? And respectfully, in this case, there was a difference. And we know that because James Bannister presented the same four alibi witnesses he presented during his first trial. His mother is deceased, so her testimony was presented through reading the transcript. But the same witnesses, and these weren't just all family members. These were friends of the family. There was a party at Mr. Bannister's house the day these events occurred. Those family members together with friends of the family were present. They showed up in court back in 1991, and they provided testimony that was believed by the trial court. And we know the trial court believed that testimony, because the trial court stated during post-conviction proceedings in ruling on a denial of post-conviction relief based on ineffective assistance of counsel, when the court said, how can I say trial counsel for Bannister was ineffective, because as I look back, had this been a bench trial, I would have found Mr. Bannister not guilty. What with the alibi testimony and all. Those statements, those words indicate that the court found the alibi testimony credible. And it was only when the prosecution entered in a way that it so violated Johnson's ability to speak the truth, that the truth was overcome by the trial court. This is conduct that this court must not condone. It violated the truth-seeking function of the criminal justice system. And with all due respect... So I'm clear on it. The answer, your answer would be the same, regardless of whether this was an initial trial in which this same agreement had been made pre-trial. It would be exactly the same result as in this case. Isn't that correct? It is correct, your honor. Using testimony obtained in this way cannot be sanctioned. Testimony that is incentivized to the degree that the witness is placed under a compulsion that he cannot... And I'm not flipped when I say this. Johnson had too good a deal. That is absolutely the case, your honor. It was too good. That is an essential component. It was too good. And when a deal is that good, together with the requirement that the witness say specific things, I see my time has expired, and I would ask for an opportunity to brief you. But was there any reason to make a deal with Johnson at all? He had exhausted all of his appeal revenue. In this case, it was the only way they were going to convict Bannister, your honor. If Johnson had been available at the first trial and had so testified under this kind of agreement, it's still different, I think, than this case where the state finds itself without any witness upon a retrial, and then Johnson appears. Yes, your honor. May I briefly conclude? Because the prosecution denied James Bannister due process and a fair trial, and in so doing impugned the integrity of this criminal justice system with the consistency clause and incentives within this contingency plea agreement, because scripted testimony violates due process, it must be excluded from James Bannister's case and from any case that is considered in Illinois. Thank you. Thank you, counsel. Mr. Nowak. May it please the court. My name is John Nowak. I'm an assistant state's attorney from Cook County, and I represent the people of the state of Illinois in this case. Your honor, this defendant here, along with six of his codefendants, murdered two people. One of those codefendants is Michael Johnson, and he agreed to testify in a defendant's new trial pursuant to this plea agreement. That plea agreement was proper, and it was just. It required truthful testimony, not just consistent testimony. This is not scripted testimony. Mr. Nowak, what if Mr. Johnson said to the state, I can either give you truthful testimony, or I can go with the post-arrest statements, but you're asking me to do both. I can't do both. Would he have received the same deal? Absolutely not, your honor. If he refused to testify truthfully, there would have been no agreement here. No, that's not the question. The question is where he said, I have some truthful testimony to give, but it's different than the post-arrest statements. You're asking me to give truthful testimony and also asking me that the truthful testimony must be consistent with the post-arrest statements. I can't, if Johnson says, I can't do that, would he get the same deal? I mean, if he said he couldn't testify consistently with that, it would depend. It would have to depend on what he's telling the state now. I mean, how does it differ? I mean, if he's telling, it would depend on what that truthful testimony would be. If he agreed to testify truthfully, but didn't want to do it with a consistency statement, I believe we would have entered into the same agreement, your honor. But it's not on the record, I'm not sure exactly what our prosecutors would have done, but I'm certain that if he would have agreed to testify truthfully, we would have agreed to this. But if you knew that testimony wasn't going to be probative of the defendant's crime, why would you ever enter into an agreement? Well, certainly, your honor, and that's why we required in here not just to be truthful, but it would be consistent with these prior statements. Because just to have, to offer him this benefit, and certainly the trier fact hurt every benefit he was going to get. And it would be pointless and not fair to the state to have him go up there without any guidelines for what he was going to testify to. We should have every right, as the Nevada Supreme Court held in Acuna, the state has every right, it's fair to the state for them to know in advance generally what that witness is going to testify to. The witness in Acuna, the court went through it very thoroughly in explaining why this is fair. It said it would be neither realistic nor fair to expect the state to enter into this bargain for this very reason. Because without assurances that that promisee's trial testimony would be consistent with the information he's been giving to the state. Again, the court went on and said the state has every right for this, concluding that bargaining for specific trial testimony that is truthful is essentially consistent in upholding the due process rights of this defendant. It's not inconsistent with the search for the truth. That's what the Nevada Supreme Court held in Acuna. Your Honor, at this point, to backtrack a little bit, it's not fair to say that Johnson had nothing pending at the time. He had a post-conviction petition appeal that was pending at the time, Your Honors. And as part of this agreement, he agreed to have that. I'm not sure if it was his first or second. I believe it might have been his second PC, Your Honor. But he had had this appeal pending, and he agreed to have it withdrawn. In fact, after Bannister's trial, it was over 45 days later. Do you remember the question? Yes, Your Honor. Did the trial court have jurisdiction there is essentially your question. It was the authority of the trial court. It was the authority. He had the authority here under the doctrine of revestment. He had general jurisdiction because at that point, Johnson had withdrawn his appeal. He withdrawn. He hadn't filed the record yet. And under 309, he had withdrawn it. So there was general jurisdiction in the trial court at that point. And through the doctrine of revestment, the trial court had jurisdiction. But even aside from that, Your Honor, even if the trial court did not have jurisdiction, it would make no difference as to the admissibility of this witness's testimony. This witness testified long before the trial court attempted to exercise jurisdiction over Johnson. Johnson testified in the middle of June of 2004. At that point, nothing had been acted upon by the trial court on that plea agreement. Whether the trial court had jurisdiction or not at that point was absolutely irrelevant to whether that testimony comes in. Johnson testified in June of 2004. It wasn't until the end of July that the trial court acted on his plea agreement. The admissibility of Johnson's testimony cannot be questioned. A co-defendant, an accomplice, has every right to testify against a co-defendant. Nothing makes that testimony inadmissible. And certainly here, Your Honors, again, this testimony was not scripted. These were Michael Johnson's own words that he explained in his court-reported statement back in 1989. It goes back as far as that. This court has called plea bargaining an essential component of the administration of justice and vital to and highly desirable for our criminal justice system. Here, this plea agreement was between Michael Johnson and the state. Bannister had nothing to do with this. Yet here, the defendant is challenging the very existence of this agreement and challenging the very ability of Michael Johnson to testify. Is anyone else in a position to complain about this agreement? He's in a position to complain about the particular terms. He's more than able to do that. But to question and challenge the existence of this agreement, which is his first issue, he's arguing that this agreement is void. Well, first off, he doesn't have standing to argue it's void. Only Johnson would have standing to challenge that. It's akin to a Fourth Amendment violation, Your Honor, where a defendant is claiming that evidence was taken illegally from a third person and can't be used against him. That's essentially what he's doing here. He's saying this evidence was taken illegally from Michael Johnson. It can't be used against me. He simply has no standing. But even if he did have standing here, Your Honors, again, this agreement was valid. Repeatedly, on and on and on throughout this plea agreement, it required that Michael Johnson testify truthfully. Not just consistently, but testify truthfully. Isn't that a requirement of anyone who raises their hand and takes the oath to tell the truth? Absolutely, Your Honor. Every witness has the obligation to testify truthfully, Your Honor. But here, making that part of the plea agreement and making that agreement not only conditional upon that being truthful, but noting in the limitations of the plea agreement that if it later was determined that his testimony was not truthful, or that those statements upon which this agreement were based were false, this entire agreement would become null and void. And again, Your Honors, here, the trial judge here heard every detail about this agreement. He heard every detail regarding Michael Johnson's initial statements, his attempt to establish an alibi when he was first arrested. Heard about his court-reported statement. Heard about his attempt to vacate that statement at his own trial. And he attempted to vacate it on Miranda grounds, saying he didn't get Miranda. He wasn't claiming that he didn't actually see it. But the trial judge heard every single detail of this, Your Honor. Defendant cross-examined him thoroughly between Michael, between James Bannister and his co-defendant, Eric Smith. They cross-examined him for over 90 pages of the transcript. The trial judge knew every detail about Michael Johnson, not just what he was getting out of this agreement, not just his prior statements. He knew about these prior alibi. He knew about his behavior in prison. He knew what he was going to get out of this deal. And yet, nevertheless, at the end of this trial, the trial judge found this to be substantial, incredible new evidence. Substantial, incredible new evidence. That's how Judge Schreiner determined it. He heard all of this. It was tried before the trial court, and he knew everything about it. Consistency clauses, Your Honor, where they require truthful testimony, have been upheld in every single state that has addressed this. It is not true to say that that's not the case. For example, in Rivera in Arizona, in Jones from Michigan, Bolden from Tennessee, and Acuna from Nevada, just to name a few, every time there is a plea agreement that requires consistent and truthful statements, consistent testimony that's truthful, every single state has found that to be valid. Do you have any idea how many states have made that judgment? There are at least five, Your Honors. We have Arizona, Michigan, Tennessee, Nevada, and then I believe North Carolina and Birchette. I'm not sure what the state is on Birchette, Your Honors. All of those, they did look at the facts surrounding the agreement and the content of the agreement. In each one of those, Your Honors, yes, they looked. The terms of it were identical here, requiring not just consistent testimony, but truthful testimony. The one case, the Fisher case, also from Arizona, that found a consistency statement, a consistency clause to be false. They looked at the whole scenario. They looked at the deal that was given and also at the agreement to tell the truth, to be consistent with some other testimony. I'm wondering if this is a case-by-case determination. It is not a case-by-case determination, Your Honor. This agreement here is identical in those very terms. Is it to the extent that we look at the agreement itself in each of these cases? In each case, you look to the terms of the agreement. And in those cases, the agreement required truthful testimony that was consistent with pre-plea agreement interviews. That's precisely what's in this plea agreement. Looking at this plea agreement, it requires exactly what was found to be valid in all of these cases, repeatedly throughout there. In the very first sentences of the agreement, it requires truthful testimony. In the second sentence, it requires truthful testimony. The next paragraph requires truthful testimony. The next paragraph after that talks about truthful testimony. In the limitations of plea agreement, it specifically says that if it was determined that these statements were false, if his testimony was false, if what this agreement was based on was false, that this agreement would be null and void. Here, Your Honors, we know that this was the truth because that's what the trier of fact found. This trier of fact heard for over 180 pages in the transcript, dealing both direct and cross-examination, heard every detail from Michael Johnson. And this trier of fact found him to be credible. The State could avoid the implications of the agreement either if it was determined that the consistent statement was false. Is that correct? Yes, if it was determined with false, it would be void. The testimony was not consistent, either one. Correct, Your Honor, but as far as the consistent part, again, that ties in with the truthfulness. That ties in with the truthfulness because if it's found that these consistent statements were false, this agreement would be void. In addition, Your Honors, Johnson, again, he was not tied to this. Again, these were his own statements. We did not script that. This was Johnson's testimony. But in addition, he didn't limit himself to what was actually in those prior statements. For instance, and this all came out on cross-examination, he talked about going back upstairs to get some wave caps to wear. That's nowhere in any of these prior statements, but he testified to it at trial. Why? Because it's part of what happened. It's part of the truth. He also testified that they were smoking marijuana before they went down. Again, as he said in cross-examination, that doesn't help my credibility, he said, because everyone knows that smoking marijuana may impact your ability to remember. Smoking marijuana was not in any of these statements, but it's part of what happened. It's part of the narrative, part of the truth of what Johnson testified to, and that came out. So he wasn't just limited to this. He was limited only by what was the truth. Mr. Noack, where would these statements be found false? I mean, how would they be found false? Would that be pretrial investigation? It certainly wouldn't be lack of the statements garnering a conviction, right? It would not, Your Honor. So how would the prosecution find out they're false? Well, certainly the most important way would be if the trier of fact, here the trial judge, found them to be false, for instance. I mean, if he did find them to be false, and acquitted Bannister finding specifically, Michael Johnson's testimony was false. He testified consistently with these prior statements, but I don't believe them. I don't believe them. I heard his testimony, and I don't believe it. If the trier judge did that, there would be no agreement, because these statements in his testimony were found to be false. Counsel, are you telling us that if it had been a not guilty, based upon a negative evaluation of the credibility of the witness, that the witness would have had his life sentence reinstated somehow? Not necessarily, Your Honor. But of course, if it was later determined, and as part of that determination to find out if it was false, if the trier judge makes a specific finding that this is false, certainly that's going to weigh heavily that Johnson violated the terms of his agreement. So it wasn't conditional upon finding of guilty of James Bannister, but if it was found that, for instance, the trier of fact could have found defendant to be guilty, but found, could have said, I don't find Johnson's testimony to be credible. I don't believe him. Not the only testimony that tied him to the crime, was it? Not the only testimony, Your Honor. We had substantive evidence from prior testimony from DeAnda Wilson, from his prior grand jury testimony and his prior testimony that came in. This is the witness who Judge Schreier granted a new trial because of the lack of credibility, isn't that right? That's certainly true, Your Honor. But again, this all ties in together. It can't be looked at isolated witness by witness, because here the trier judge, the trier of fact, the trial judge, heard not only Johnson's testimony, but also heard the prior testimony of DeAnda Wilson. And not coincidentally, those facts from DeAnda Wilson's prior testimony and what Michael Johnson testified to, they match. They match. They corroborate one another. Because that's actually what happened. It came out in testimony with DeAnda Wilson specifically. This wasn't part of his, this wasn't part of the post-conviction petition proceeding that allowed Mr. Bannister to have a new trial. That in the witness room, in the jury room, before DeAnda Wilson's mother came out to testify, DeAnda Wilson was in there with her. And DeAnda Wilson told his mother, warned her, you know they came after me. You know they can get you. So be careful, Mom. Don't testify. So certainly, and that came out at trial. So certainly that would have an impact on the trier of fact, determining whether DeAnda Wilson's current recantations are believable, or whether his prior statements before he had joined defendant's gang, before he had been in prison with the defendants, which one of those statements would be credible. And certainly he found not only Johnson's testimony to be credible, but certainly DeAnda Wilson's previous testimony to be credible as well at this point. So that's the conclusion of that new evidence. Here, Your Honors, again, the only case where a consistency clause has been found to be invalid was that Fisher case. And in there it did not require truthful testimony. That's why in Rivera the Arizona Supreme Court distinguished it. Again, here it required truthful testimony repeatedly, Your Honors. In this, you mentioned the Arizona case. I'm just looking at the head note now. Because the witness had committed to testify to a subtle version of the facts, then by testifying that would violate his right to a fair trial. That's from Fisher, Your Honor. That's part of talking about Fisher. And that's precisely why the difference in Rivera was that Rivera, like in our case, required the testimony to be truthful. And again, Your Honors, every single state in this country has found agreements such as this, precisely such as this, to be valid in protecting the due process rights of the defendant. It's only a case-by-case determination when you look at the terms of the agreement, Your Honor. And these terms are precisely the same as those in these other cases. In Acuna, in Bolden, in Jones, in Rivera, the terms are identical. Well, certainly there's a benefit, Your Honor. In each one, the benefit may be different. And here, it's typical of any plea agreement for a defendant to receive a lesser sentence or a lesser charge. It may not be determinative, but was there an agreement to transfer him from one prison to another, or was that decided that was up to the IDOC? It was absolutely up to the IDOC, Your Honors. Not only was that in the agreement, but Michael Johnson himself, because he was cross-examined so thoroughly, he knew it was up to the Department of Corrections to make that determination. In addition, as part of that, Michael Johnson in his testimony testified expressly that he knew that this plea agreement was not a certain thing. He knew that this was up to the trial judge and that the trial judge could reject it at any time. It was up to the trial judge. So Michael Johnson testified. What's the standard of review on that? As far as rejecting the plea agreement, Your Honors? Evaluating the factual findings of Judge Schreiber. The factual findings, it's an abuse of discretion, Your Honor. Deference must be shown to the factual findings made by the trier of fact. And that includes the credibility of the witnesses. Credibility of determinations, again, are always left to discretion of the trier of fact, Your Honor. And here, Your Honors, the appellate court properly held that this defendant received due process and a fair trial. This plea agreement was valid and just. Every other state has found this agreement to be valid and defendant received due process and a fair trial. So in conclusion, Your Honors, we ask this court to affirm the judgments of the trial court and the appellate court and affirm the judgment of first degree murder by Mr. Bannister. Your Honors, you cannot divorce the truth from the consistency clause in this case. When you require a witness to testify consistently with prior statements and tell the witness that those statements are the truth, you have violated a defendant's right to due process because you have scripted the testimony. It is completely inaccurate that each of the jurisdictions that have permitted consistency clauses when the witness testifying was also required to tell the truth, that this has been permitted without question. In fact, the Jones case, the Acuna case, the Rivera, each of the cited decisions by the state, all of those cases clearly reaffirm that scripted testimony violates due process, period. And as Your Honor pointed out, and it is accurate, the determination of whether the specific plea agreement violates due process or is scripted is determined on a case-by-case basis. For instance, the case that the state relied on, the Acuna case, and State v. Bolden, the Tennessee decision, both had consistency plea agreements that had language that was far less restrictive than the language in this particular case. In Johnson's plea agreement, he was required by the words, such truthful testimony shall be consistent with. In the Bolden and Acuna decisions, and in particular in the Rivera decision, the Arizona case that the state recites, the defendant himself avowed that his statements were true as part of the language. The language was defendant shall testify fully, accurately and truthfully in any trial, retrial or defense interview regarding co-defendants. And then further, defendant avows that all the facts stated by her regarding this case are fully, accurately and truthfully stated. It was the defendant affirming the truthfulness, the person testifying, not the state dictating to that witness that the truth was the consistent statements. But the prosecutors in this case could have eliminated our need even to be here today by simply requiring that Johnson tell the truth. If it is true, as the prosecution has stated today, that the trial court, Judge Schreier, was fully aware of all of the varying statements that Johnson had made, there was no need to require him to testify consistently with those statements. The prosecution could simply have required that Johnson tell the truth, period. And that's all any court requests of a witness testifying under oath, because that is what the truth-seeking function of the trial process is all about, a search for the truth. Wouldn't that seem a little short-sighted on behalf of the state if they have a person who's sentenced to prison for natural life and they say tell the truth and he comes in and perjures himself? Why would the state enter into any kind of a plea agreement to give any kind of benefit under those circumstances? It is the position of the petitioner that the state should not be in the process of giving benefits to witness to testify, period. The defense, and that creates an imbalance in the criminal justice system just alone. But setting that aside, in this instance, and in all cases, when the prosecution requires that a witness testifies consistently, that is when the prosecution interferes in the truth-seeking function. It is a different thing to be aware of what a witness is going to say versus dictating to the witness what to say. The witness, and even although this would not be a recommended course, the witness can attest or avow that what the witness is going to say is the truth. That's different from the state requiring that witness to say those things. Will the record, will we be able to tell from the record how this plea agreement came down? If we take as a spectrum that you have a plea agreement that simply says testify truthfully, you have no problems with that. You have a plea agreement that says testify consistently without reference to truth, certainly there are problems. I think you indicated that in this case the state said you have to testify consistently without reference to truth. You have to testify consistently with this pretrial statement and that's the truth. If the state had said, and I don't know what the record would bear out on this, if the state had said what is the truth and the witness says it's this statement, is that, would that be okay in your eyes? It's less of a problem than what occurred here. On another matter, based upon your opening argument here, was the fact that the benefit of a witness testifying consistently and the benefit that Johnson received was too good a deal, I think, in the words of the Chief Justice. Does it matter whether there was consistency in it? Would you make the same argument that it was just too good a deal for somebody to pass up he was going to testify favorably to the state in this case? Yes, Your Honor. The incentive alone was violative, but certainly the incentive plus the script made it decimate the truth-seeking function. So anyone individually is completely a problem for due process and fair trials. If the prosecution is not required to play fair, then no trial will be fair. And that is the problem and that is why this Court must intervene to determine that consistency, provisions, and especially those even that require that a witness testify truthfully together with consistency, when the wording of that agreement dictates what is the truth, that should not be condoned. That has no place in the criminal justice system. Does that put us in a position in reviewing all future plea agreements to see whether the bargain is too good to be true? The way to avoid that is to stop the practice, to permit witnesses to testify truthfully without the benefit of incentives. But even without requesting that this Court make a determination on a case-by-case basis that the individual agreement is too good, the Court can do justice in this case. And in doing justice in this case, the Court will inform and educate and determine the limit of a prosecutor's ability to secure testimony that violates due process. Just your decision in this case will go miles to educate the prosecution about its limits and its methods and its authority to secure evidence against witnesses that is tainted and that is improper and violative. The prosecution talked about the Court having jurisdiction. And clearly in this case there was no jurisdiction. Illinois law is clear. You cannot enter into a plea agreement on charges that have already been decided. No claim of revestment would ever invest the Court with jurisdiction. And jurisdiction, of course, is power, the authority to act. And in this case, the trial court had no authority to act and the prosecution had no authority to enter into a plea agreement, to deliver on the promises that it made on that agreement, and specifically, it did not have the right to dictate and script that testimony that convicted James Bannister. And it's so critical to note that this was the only direct evidence of James Bannister's guilt. Any claim to the contrary is completely a fallacy. There was one witness before DeAnda Wilson. That witness was found to be a perjurer. That witness has been convicted of perjury. And at this point there was no additional evidence but for that testimony that was born of that scripted, texted testimony that Johnson provided. In this case as well, the true language that the Court should require of any witness testifying is that of truth, period. The relevance of the Fourth Amendment as the prosecution raised is to provide direction to this Court on what this Court needs to do. What this Court must do in correcting the injustice that occurred here. The Fourth Amendment, like other exclusionary provisions, provide a judicially created mechanism whereby testimony that is inadmissible is excluded from consideration. No conviction should rest on tainted scripted testimony as it did in this case. And by using the lesson of the exclusionary rule that's been in existence for almost 100 years, this Court has the tool that it needs to right the wrong done to James Bannister in this case. For all of these reasons, Your Honor, because due process was violated, because these acts impugned the integrity of the judicial system, James Bannister respectfully requests that this Court reverse the appellate court decision, reverse the trial court decision, and strike from use and bar from any future use evidence obtained under circumstances such as these. Thank you. Thank you, Ms. Reddick.